ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| GUSTAVO GELPÍ ABARCA  Recurrente  v.  AUTORIDAD DE ACUEDÚCTOS Y ALCANTARILLADOS  Recurrido | **KLRA202400267** | *REVISIÓN ADMINISTRATIVA* procedente de la Autoridad de Acueductos y Alcantarillados  CASO NÚM.: AA-151203  SOBRE: Recurso de Revisión |
|---|---|---|

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 25 de octubre de 2024.

Comparece ante este foro la Sra. María Soledad Ramírez Becerra (señora Ramírez o "la recurrente") en lugar del Sr. Gustavo Gelpí Abarca[2], por derecho propio, mediante revisión judicial presentada el 29 de mayo de 2024. Nos solicita que revisemos la *Resolución Final* notificada el 29 de abril de 2024, por la Autoridad de Acueductos y Alcantarillados (AAA o "la recurrida"). Mediante esta, la AAA confirmó la determinación de la agencia recurrida. En consecuencia, ordenó a la señora Ramírez que pagara el importe de las facturas que le fueron notificadas. A su vez, ordenó el archivo y sobreseimiento de la *Querella*.

Por los fundamentos que expondremos a continuación, **DESESTIMAMOS** el presente recurso por falta de jurisdicción, al haberse tornado académico.

---

[1] De conformidad con la Orden Administrativa OATA-2024-060, debido a la inhibición del Hon. Félix R. Figueroa Cabán, se modifica la integración del Panel.
[2] *Véase*, *Autorización*, Anejo XI, pág. 89 del apéndice del recurso. La Recurrente fue autorizada por el Sr. Gustavo Gelpí Abarca para presentar la *Querella* de epígrafe.

Número Identificador
SEN2024 _____

## I.

La señora Ramírez presentó una *Querella* ante la AAA. Alegó que, era usuaria del servicio de agua de la cuenta número 00021247821 de la AAA, en la propiedad[3] del Sr. Gustavo Gelpí Abarca. Arguyó que, a partir del mes de julio de 2015, comenzó a recibir facturas excesivas por consumo de agua en su residencia. Sostuvo que dichas facturas fluctuaban entre $218.48 a $2,099.81 mensual. Enfatizó que, lo facturado no respondía a la realidad del consumo. Específicamente, objetó las facturas de julio 2015, abril, mayo y octubre de 2016; febrero, octubre y diciembre de 2018; junio, septiembre, octubre y diciembre de 2019; enero, febrero, junio, agosto y septiembre de 2020; octubre de 2021; febrero, marzo, junio, agosto y septiembre de 2022.

Tras varios trámites procesales, el 6 de octubre de 2022, la AAA señaló una vista administrativa para el 1 de noviembre de 2022.[4] Ello, a los fines de dilucidar los reclamos de la recurrente.

Así las cosas, el 1 de noviembre de 2022, la señora Ramírez presentó su *Moción en Torno a Violaciones al Debido Proceso de Ley, la Igual Protección de las Leyes y Solicitud de Ajuste y Eliminación de Facturas*.[5] En síntesis, adujo que la propiedad tenía tres (3) habitaciones, dos (2) baños y medio y no tenía piscina. Sostuvo que trabajaba fuera de la casa y tenía un hijo universitario. Asimismo, esbozó que desde el 2015 objetó oportunamente las facturas. No obstante, argumentó que dichas facturas reflejaban un balance como si las mismas

---

[3] Dicha propiedad estaba localizada en la calle G, número 8 en Villa Caparra, Guaynabo, Puerto Rico.
[4] *Señalamiento de vista*, Anejo XII, págs. 224-228 del apéndice del recurso.
[5] *Moción en Torno a Violaciones al Debido Proceso de Ley, la Igual Protección de las Leyes y Solicitud de Ajuste y Eliminación de Facturas*, Anejo XI, págs. 84-223 del apéndice del recurso.

no se hubiesen objetado. Cónsono con lo anterior, razonó que la AAA violentó su debido proceso de ley, toda vez que, no fue hasta el 6 de octubre de 2022, que señaló vista por primera vez. Es decir, siete (7) años posterior a la primera objeción de la factura. Por otra parte, indicó que, que las facturas de sus vecinos reflejaban cargos menores. Finalmente, expuso que, contrató dos (2) plomeros y, ambos concluyeron que no había pérdida de agua, ni salidero oculto, los cuales justificaran las altas facturas de consumo de agua.

En la misma fecha, a saber, el 1 de noviembre de 2022, la AAA celebró una vista administrativa.[6] En lo pertinente, determinó que había justificación para poner en duda la exactitud del contador, por lo que se debía realizar la contrastación en los próximos treinta (30) días. Esto, libre de cargos a la recurrente.

Posteriormente, el 3 de febrero de 2023, la señora Ramírez presentó su *Moción Reiterando Violaciones de la AAA y Solicitud de Ajuste y Eliminación de Facturas*.[7] Planteó, que la primera y segunda prueba de contrastación reflejaron que el contador estaba fuera de sus niveles de corrección. De igual forma, esgrimió que objetó las facturas de octubre y diciembre de 2022, por ser excesivas. Cónsono con lo anterior, solicitó el correspondiente ajuste y la eliminación de los cargos facturados en exceso.

Ese mismo día, la AAA llevó a cabo una vista en la cual declaró *No Ha Lugar* la *Moción Reiterando Violaciones de la AAA y Solicitud de Ajuste y Eliminación de Facturas*.[8] A su vez, ordenó a realizar otra contrastación del

---

[6] *Minuta/Resolución*, Anejo X, págs. 81-83 del apéndice del recurso.
[7] *Moción Reiterando Violaciones de la AAA y Solicitud de Ajuste y Eliminación de Facturas*, Anejo VIII, págs. 67-77 del apéndice del recurso.
[8] *Minuta/Resolución*, Anejo VII, págs. 64-66 del apéndice del recurso.

contador. Por último, señaló vista administrativa para el 26 de abril de 2022.

Luego, el 5 de junio de 2023, la recurrente presentó una *Moción Informativa Reiterando Solicitud de Ajuste*.[9] Indicó que, se habían realizado tres (3) pruebas de contrastación del contador y, que al momento de dichas pruebas surgía un balance excesivo facturado por la AAA. Insistió que, dichas pruebas reflejaban que el contador estaba fuera de sus parámetros. Argumentó que, objetó los cargos facturados mediante las reclamaciones correspondientes ante la AAA, toda vez que resultaban ser excesivos. En virtud de lo anterior, solicitó se ordenara el ajuste correspondiente. En la misma fecha, se celebró una vista en la cual se ordenó a la AAA a realizar dos (2) lecturas adicionales al nuevo contador de la recurrente.[10]

Así las cosas, el 21 de agosto de 2023, la señora Ramírez presentó una *Moción Informativa Reiterando Solicitud de Ajuste* en la cual reiteró sus planteamientos de la *Moción Informativa Reiterando Solicitud de Ajuste*.[11] Además, expuso que luego que cambiaron el contador, el consumo reflejado disminuyó considerablemente. Por último, expresó que el 13 de junio de 2023, un plomero instaló una válvula antirretorno para evitar que el agua que pasaba retornara a la línea principal y, volviera a ser contada como parte del consumo. Por todo lo anterior, reiteró que procedía el ajuste en las facturas.

Celebrada las vistas el 21 de agosto de 2023 y el 18 de septiembre de 2023, el 29 de abril de 2024, la AAA notificó su *Resolución Final* en la cual realizó veintiocho (28) determinaciones de hechos.[12] En vista de las

---

[9] *Moción Informativa Reiterando Solicitud de Ajuste,* Anejo VI, págs. 55-63 del apéndice del recurso.
[10] *Minuta/Resolución*, Anejo V, págs. 52-54 del apéndice del recurso.
[11] *Moción Informativa Reiterando Solicitud de Ajuste,* Anejo III, págs. 46-51 del apéndice del recurso.
[12] *Resolución Final*, Anejo I, págs. 1-11 del apéndice del recurso.

determinaciones de hechos formuladas, la AAA determinó que el proceso de contrastación se realizó por funcionarios capacitados, con instrumentos certificados y calibrados. Asimismo, enfatizó que el proceso se caracterizó por ser uno cuidadoso, sin ánimo de defraudar y en total transparencia. En virtud de lo anterior, resolvió que ninguna de las investigaciones realizadas arrojó un problema de pérdida de agua.

De otra parte, destacó que, se realizaron tres (3) contrastaciones, la cuales arrojaron problema en el funcionamiento del contador. Particularmente, apuntó que la primera reflejó facturación adicional a la consumida. Ante ello, se realizó una lectura base, se computó el consumo promedio diario y se realizó el ajuste en la factura. Entiéndase, el error fue subsanado. De otra parte, indicó que las otras dos contrastaciones arrojaron problemas en el funcionamiento del contador, más la facturación era menor al consumo. Cónsono con lo anterior, confirmó la determinación de la agencia recurrida. En consecuencia, resolvió que procedía que la recurrente pagara el importe de las facturas que le fueron notificadas. A su vez, ordenó el archivo y sobreseimiento de la *Querella*.

No conforme con lo anterior, el 29 de mayo de 2024, la señora Ramírez presentó el recurso de epígrafe. Mediante este, adujo que la AAA cometió los siguientes errores:

> La AAA erró en la apreciación de los hechos al concluir que las facturas objetadas estaban correctas contrario a la totalidad de la prueba presentada.

> La AAA erró en la apreciación de la prueba al fijar el consumo histórico de la parte querellante a base del consumo para el período objetado tras comprobarse mediante pruebas de contratación que el contador utilizado por la AAA para medir dicho consumo no estaba operando adecuadamente.

Erró la AAA al dejar de demostrar la causa razonable del consumo excesivo reflejado en las facturas de la parte querellante.

Erró la AAA al dejar de hacer ajustes a la cuenta de la parte querellante tras haberse demostrado que los contadores no estaban operando adecuadamente por lo cual mismos tuvieron que ser cambiados.

Erró la AAA al concluir, contrario a la prueba, que la con la instalación de la válvula de retorno por la parte querellante se demostró que no había deficiencia entre el servicio de la AAA y las sumas facturadas.

Erró la AAA al no determinar que a la querellante se le violó su debido proceso de ley en el trámite del cobro de las facturas objetadas el cual fue contrario a la Ley 33.

Erró la AAA al negarse a admitir prueba ofrecida pertinente sobre la naturaleza de los nuevos contadores los cuales carecían de una válvula de retorno.

En respuesta, el 20 de septiembre de 2024, la AAA presentó una *Solicitud de Desestimación por Academicidad* ante este Tribunal apelativo. En esencia, arguyó que ajustaron todas las facturas objetadas en el caso de epígrafe, por lo que el remedio solicitado por la recurrente le fue concedido. Particularmente, señaló que luego de aplicar los ajustes correspondientes, la cuenta quedó con un crédito a favor del titular, ascendente a $5,387.86. A tales efectos, entendió que no había controversia pendiente de adjudicación y, que procedía la desestimación del recurso por academicidad.

En desacuerdo, el 1 de octubre de 2024, la recurrente presentó su *Oposición a Solicitud de Desestimación por Academicidad* en el cual reiteró sus planteamientos iniciales. Adujo que, procedía revocar la *Resolución Final* que emitió la AAA. Por último, solicitó se ordenara a la recurrida a realizar todos los ajustes a base del consumo medido en el contador instalado el 8 de agosto de 2024 y, reembolsar los pagos correspondientes.

El 17 de octubre de 2024, la AAA presentó su Réplica a *Oposición a Solicitud de Desestimación*. Por su parte, el 12 de octubre de 2024, la señora Ramírez presentó una *Breve Dúplica*. Así, con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II.

### -A-

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003, establece que, como Tribunal de Apelaciones, estamos facultados para revisar las "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". Art. 4006(c), 4 LPRA sec. 24(y)(c). Por su parte, la Ley Núm. 38-2017, mejor conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), es el cuerpo normativo que delimita el alcance de la revisión judicial de las decisiones administrativas.

Específicamente, la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, establece que la revisión administrativa ante este foro apelativo intermedio se hará respecto a órdenes o resoluciones finales, luego de que el recurrente haya agotado los remedios provistos por la agencia o el organismo administrativo correspondiente.

### -B-

El principio de justiciabilidad es una doctrina de autolimitación del poder judicial. Ésta responde al papel asignado a la judicatura, en una distribución tripartita de poderes, que está diseñada para asegurar que los tribunales no intervendrán en áreas sometidas al criterio de otras ramas de gobierno. Véase, *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 720 (1980); *Flast v. Cohen*, 392 US 83 (1968). Por lo tanto, el poder de revisión

judicial únicamente puede ejercerse en un asunto que presente un caso o controversia, y no en aquellas circunstancias en que se presente una disputa abstracta, cuya solución no tendrá consecuencias para las partes. Véase, *ELA v. Aguayo*, 89 DPR 552, 558-559 (1958).

La referida doctrina responde a que "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas." *ELA v. Aguayo*, supra, pág. 559. Véase, además, *Hernández Torres v. Gobernador*, 129 DPR 824 (1992). De esta forma, nos aseguramos de que el promovente de una acción posea un interés en el pleito "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia." *Noriega v. Hernández*, 135 DPR 406, 427 (1994).

Al asegurarse de que los asuntos que se traigan a su consideración sean justiciables, los tribunales deben evaluar que dichos asuntos: 1) no envuelvan aspectos relacionados con la política pública que paute el Ejecutivo; 2) las partes tengan capacidad jurídica o legitimación activa para promover el pleito; 3) **la controversia no sea académica o consultiva**; y, 4) la controversia esté madura. *Acevedo Vilá v. Meléndez Ortiz*, 164 DPR 875, 885 (2005). (Énfasis suplido). Véase, además, *UPR v. Laborde Torres y otros I*, 180 DPR 253, 280 (2010); *Noriega v. Hernández,* supra, pág. 421.

Así las cosas, una controversia puede convertirse en académica cuando "su condición viva cesa por el transcurso del tiempo." Véase, *UPR v. Laborde Torres y otros I*, supra, pág. 281. Nuestro Tribunal Supremo ha expresado que "[l]a doctrina de academicidad es una manifestación

del principio de justiciabilidad." *Amador Roberts et als. v. ELA*, 191 DPR 268, 282 (2014). Conforme a lo anterior, es forzoso concluir que un caso no es justiciable si la controversia se ha tornado académica. *Íd.* Lo anterior, debido a que el remedio que se pueda obtener del tribunal no tendrá efecto real alguno respecto a dicha controversia. *Noriega v. Hernández*, supra; *Asoc. de Periodistas v. González*, 127 DPR 704 (1991); *El Vocero v. Junta de Planificación*, 121 DPR 115 (1988). Por tanto, cuando los casos pierden su carácter adversativo tornándose académicos, es nuestro deber abstenernos de considerar los méritos del mismo. *Misión Industrial v. Junta de Planificación*, 146 DPR 64 (1998).

### III.

Examinado el recurso de epígrafe, concluimos que carecemos de jurisdicción para atenderlo en los méritos. Esto, pues estamos ante un recurso de revisión judicial que se ha tornado académico, luego de su presentación. El recurso de la señora Ramírez gira en torno a la facturación excesiva por consumo de agua en su residencia, desde el 2015 hasta el 2022. No obstante, en el escrito presentado por la agencia recurrida, nos informaron que ajustaron todas las facturas objetadas en el caso de epígrafe, por lo que el remedio solicitado por la recurrente le fue concedido. Entiéndase, no existía una controversia pendiente de adjudicación. Particularmente, la AAA señaló que luego de aplicar los ajustes correspondientes, la cuenta quedó con un crédito a favor del titular, ascendente a $5,387.86. A tales efectos, entendió que procedía la desestimación del recurso por academicidad. Si bien la peticionaria se opone a la desestimación, un examen de sus planteamientos y el legajo apelativo demuestran que el remedio buscado por esta ya

fue concedido por la AAA, posterior a la presentación del presente recurso de revisión administrativa.

Siendo ello así y no estando presente alguna de las excepciones contempladas en el derecho antes expuesto, desestimamos el presente recurso por falta de jurisdicción, al haberse tornado académico.

**IV.**

Por los fundamentos antes expuestos, **DESESTIMAMOS** el recurso interpuesto.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones